# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

HEIDI A. LANGSTON,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:18-CV-0658-DMC

MEMORANDUM OPINION AND ORDER

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 10 and 11), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 15 and 25).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 23, 2014. See CAR 40.[1] In the application, plaintiff claims disability began on January 20, 2014. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 30, 2016, before Administrative Law Judge (ALJ) L. Kalei Fong. In a September 9, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): chronic obstructive pulmonary disease;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: claimant is capable of medium work: specifically, she can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, but not to exceed 50 pounds; climbing ramps and stairs is unlimited; she should never climb ladders, ropes, or scaffolds; balancing, stooping, kneeling, crouching, and crawling are unlimited; there are no manipulative limitations; there are no visual or communicative limitations; she should avoid all exposure to hazards; and she should avoid concentrated exposure to fumes, odors, dust, gas, and extreme heat;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing past relevant work as a nurse assistant.

See id. at 42-49.

After the Appeals Council declined review on February 22, 2018, this appeal followed.

///

///

///

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on November 20, 2018 (ECF No. 13).

## III. DISCUSSION

In her opening brief, Plaintiff argues: (1) The ALJ failed to provide specific and legitimate reasons to reject the opinion of the treating physician, Dr. Su; and (2) the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective testimony.

### A. **Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

/ / /

5

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,
///

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 1. ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinions of record to determine Plaintiff's residual functional capacity. The ALJ stated:

> On September 24, 2014, the claimant was evaluated by an internal medicine consultative examiner, Michael G. Kinnison, M.D., Board Certified in internal medicine (Ex. 4F/6-9). The claimant complained of shortness of breath and leg cramping (ex. 4F/6). The findings from the physical examination were generally unremarkable (Ex. 4F/7-8). In addition, the neurological examination showed normal motor strength, sensation, and reflexes (Ex. 4F/8-9). Dr. Kinnison diagnosed exertional shortness of breath, exact etiology undetermined, possibly secondary to her obesity and deconditioning, and episodic muscle cramping of the right calf (Ex. 4F/9). Based on the examination, from an internal medicine standpoint, he opined standing and walking were limited to six hours daily, and only frequent climbing (*see* Ex. 4F/9).
>
> The records included a prescription dated May 9, 2016, for a wheel walker for balance and dyspnea on exertion from G. Y. Su, M.D. (Ex. 8F/2). Dr. Su issued another prescription for a seated walker on June 6, 2016, secondary to dyspnea, COPD, and a gait disturbance (Ex. 9F/1). As was discussed above, the minimal objective findings do not support the need for a walker. The findings from the physical examinations did not document any abnormalities with gait (Ex. 7F/5, 10, 15, 27, 35, 39, 45-46, 53-54, 58, 62-63, 69; and Ex. 12F/3, 9, 18, 39). In addition, imaging studies of the chest were unremarkable, and the claimant was only recently referred for pulmonary function testing (*see* Ex. 10F/1 and Ex. 12F/2).
>
> In determining the claimant's residual functional capacity, the undersigned gives great weight to the opinions of the State agency physicians on initial review and on reconsideration, who opined the claimant was capable of performing medium-exertion work (Ex. 1A and Ex. 3A). These opinions are consistent with the evidence of record, which documented minimal and conservative treatment.
>
> The undersigned also gives significant weight to the opinion of the consultative examiner who limited standing and walking to six hours daily (*see* Ex. 4F/9). Dr. Kinnison's assessment is consistent with his documented findings, which were fairly unremarkable and included normal gait and the lungs being clear to auscultation (*see* Ex. 4F). However, in light of the claimant's ongoing and intermittent complaints of shortness of breath, the undersigned assessed additional limitations.

CAR 47-48.

/ / /

/ / /

7

2. <u>Plaintiff's Contentions</u>

Plaintiff argues:

  The ALJ found that Langston suffered from the single severe impairment of chronic obstructive pulmonary disease. The ALJ did not find that Langston's obesity, which consisted of a BMI over 40 (*footnote omitted*) was a severe impairment. AR 43. This conflicts with the consultative examiner that opined that Langston's obesity was the only severe impairment and with the state agency doctor that agreed with the consultative examiner. AR 133, 394-402.

  On May 9, 2016, Langston's treating physician Gigi Su M.D., prescribed a wheeled walker to Langston for balance and dyspnea on exertion. AR 516. On June 5, 2016, treatment notes evidence that Langston had trouble walking and dyspnea on exertion. AR 529-530. On June 8, 2016, Dr. Su prescribed a seated walker for Langston due to COPD and gait disturbance. AR 517.

  The ALJ rejected Dr. Su's opinion that Langston needed a walker stating that the record did not document any abnormalities with gait and that imaging studies of the chest were unremarkable. AR 48. An ALJ may not reject the opinion of a treating or examining physician that is uncontradicted without providing "clear and convincing reasons that are supported by substantial evidence." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1996). Where the opinion of a treating or examining physician is contradicted, the ALJ must still provide "specific and legitimate reasons that are supported by substantial evidence" in order to reject it. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir.2007).

  As an initial matter, the ALJ did not even find Langston's obesity a severe impairment. Langston's severe morbid obesity, in combination with her COPD, her symptoms of shortness of breath on exertion and dizziness all provide sufficient support for the treating physician opinion that Langston needed a seated walker so that she could stop and rest while ambulating. The ALJ's error is relevant because he rejected the need for a seated walker stating that the minimal objective findings did not support the need for a walker. AR 48. However, an individual that is morbidly obese with COPD with wheezing, shortness of breath and dizziness is sufficient evidence to support that treating physician's opinion that Langston needed a seated walker to assist her.

  The consultative examination was 21-months before Dr. Su prescribed the walker. The state agency based their assessment on the opinion of Dr. Su and did not even consider the COPD as a severe impairment. Langston's shortness of breath and trouble walking due to her obesity and dizziness and shortness of breath increased in severity. The ALJ is not a doctor and is not qualified to substitute his own interpretation of the medical evidence for the opinion of medical professionals. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) *citing Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings).

> In addition, a person using a walker needs both hands to maneuver the walker, unlike a cane which only needs one hand. A person that needs a walker due to shortness of breath verses the need for a walker due to back pain or some other impairment would almost certainly have a more limited ability to stand and walk than 6 hours in and 8-hour workday (*footnote omitted*). A remand is appropriate for the ALJ to either include the need for a seated/wheeled walker or provide specific and legitime [sic] reasons to reject the limitation.

3. <u>Disposition</u>

This Court applies the "specific and legitimate" standard to analyze the ALJ's consideration of Dr. Su's opinion, in that the consultative examiner's opinion contradicts Dr. Su's opinion regarding the need for a walker. See <u>Orn v. Astrue</u>, 495 F.3d 625, 633 (9th Cir. 2007). Plaintiff alleges the ALJ erred in rejecting Dr. Su's opinion that Langston needed a walker by not providing specific and legitimate reasons supported by substantial evidence. The Court finds this argument unpersuasive. Plaintiff argues, "[t]he ALJ rejected Dr. Su's opinion that Langston needed a walker stating that the record did not document any abnormalities with gait and that imaging studies of the chest were unremarkable." This Court agrees with the ALJ that the record does in fact reveal that neither the consultative examiner, nor Plaintiff's treating physician, ever indicated in a physical examination that Plaintiff had trouble with gait and thus required a walker. Plaintiff has no trouble walking and no other remarkable complications or documented abnormalities in the record.

Although Plaintiff had intermittent complaints of shortness of breath, there is nothing in the physical examination record, besides the prescriptions for the walker themselves, that states because of Plaintiff's shortness of breath she requires a walker. Two prescriptions from the treating physician that are not backed by a physical examination in the record is insufficient evidence to support Plaintiff's contention that being obese and having shortness of breath necessitates a walker. Accordingly, the record of Plaintiff's physical examinations, including the consultative examiner's conclusions, collectively provide specific and legitimate reasons supported by substantial evidence to uphold the ALJ's contentions that Plaintiff does not need a walker.

///

1          Further, Plaintiff alleges the ALJ erred at Step 2 when he did not characterize
Plaintiff's obesity as a severe impairment. Plaintiff states, "[t]his conflicts with the consultative examiner that opined that Langston's obesity was the only severe impairment." However, the consultative examiner did not in fact ever indicate in his evaluation that obesity was a severe impairment. Although the consultative examiner concluded Plaintiff's ability to stand/ walk should be limited to six hours daily, primarily by her obesity and deconditioning, nowhere in the evaluation does he indicate Plaintiff's obesity "significantly limits [her] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520. In fact, regarding workplace environmental activities, the consultative examiner stated he would place no environmental limitations upon her. Because Plaintiff fails to establish an actual argument in support of this contention, this Court finds the ALJ properly excluded Plaintiff's obesity as a severe impairment and thus did not err at step 2.

          Lastly, Plaintiff states in her opening brief that Plaintiff's symptoms of shortness of breath on exertion and dizziness provide "sufficient support for the treating physician opinion that Langston needed a seated walker so that she could stop and rest while ambulating." However, there is no objective evidence in the record to support this statement. Plaintiff's treating physician wrote two prescriptions for walkers without any evidence from the physical examinations in the record to support their necessity. Specifically, Plaintiff's treating physician never stated the need for a walker was for Plaintiff to "stop and rest while ambulating." Additionally, Dr. Su never indicated in a physical examination that Plaintiff had any trouble with walking thus requiring a walker to "stop and rest" while walking. Plaintiff's symptoms of shortness of breath and dizziness are not "sufficient support" of the treating physician's opinion because there is no evidence the treating physician connected the need for a walker to shortness of breath or dizziness. Therefore, this Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence to resolve discrepancies between the contradicting opinions of the consultative examiner and Plaintiff's treating physician, Dr. Su.

///

///

**B.  Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

/ / /

1. ALJ's Analysis

At Step 4, the ALJ evaluated the credibility of Plaintiff's subjective statements to determine her residual functional capacity. The ALJ stated:

> The claimant testified she last worked in January 2014. She alleged she stopped working because she was told she was not medically fit to work secondary to elevated blood pressure. However, she admitted looking for other work since the alleged onset date. She alleged she was unable to work because she was unable to walk very far due to shortness of breath, dizziness, and feeling light-headed. She claimed the shortness of breath triggered the dizziness and lightheadedness. She alleged she experienced dizziness and lightheadedness even with standing, which required her to use a walker with a seat.
>
> She testified she used an inhaler for her shortness of breath. She also testified she quit smoking 11 months prior to the hearing date. She claimed she experienced shortness of breath with walking, bending, squatting, or any other activity requiring exertion. She alleged she could be on her feet for ten minutes at one time, and she alleged she had to sit for an hour with her feet elevated after being on her feet for this amount of time. She claimed she could sit for two hours at a time. She estimated she could lift 10 to 15 pounds.
>
> In addition to the claimant's testimony, the undersigned also considered the function reports completed by the claimant (Ex. 3E and Ex. 6E). The claimant's statements in these function reports are of the same general nature as the subjective complaints from her testimony.
>
> The undersigned finds the claimant's allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully supported by the objective evidence of record.
>
> While at the hearing, the claimant alleged very limited activities of daily living, these limitations appear to be self-imposed given the minimal objective findings. Despite her allegations of shortness of breath, imaging studies of her chest were unremarkable, and the claimant was only recently referred for pulmonary testing (*see* Ex. 10F/1 and Ex. 12F/2). In addition, while she alleged difficulty with walking, the findings from the physical examinations did not document any abnormalities with gait (Ex. 7F/5, 10, 15, 27, 35, 39, 45-46, 53-54, 58, 62-63, 69; and Ex. 12F/3, 9, 18, 39).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The period at issue begins on the alleged onset date of January 20, 2014. In order to view the record in a light most favorable to the claimant, the undersigned has reviewed and considered all the evidence of the record.

> The treatment records reveal the claimant received routing and conservative treatment since the alleged onset date.
>
> The treatment records documented treatment for occasional complaints of shortness of breath and a diagnosis of chronic obstructive pulmonary disease (COPD) (*see* Ex. 7F and Ex. 12F). However, the findings from the physical examinations were generally unremarkable and included the lungs being clear to auscultation (Ex. 7F/5, 10, 15, 27, 35, 39, 46, 54, 58, 62, 69; and Ex. 12F/3, 9, 18, 39). In addition, there was no evidence of exacerbations requiring urgent care or hospitalization.
>
> The treatment notes documented a mild exacerbation of the COPD in February 2016, which was treated with medications and antibiotics (*see* Ex. 7F/24). On May 9, 2016, the claimant complained of shortness of breath and wheezing (Ex. 12F/12). The findings from the physical examination included the lungs being clear to auscultation, but decreased breath sounds bilaterally (*id.*). The impression included COPD, and the plan included medications, and imaging studies of the chest (Ex. 12F/13). Radiographic imaging of the chest did not reveal any focal pleural effusions or any other abnormalities of the lungs (*see* Ex. 10F/1).
>
> On July 9, 2016, the claimant complained of dyspnea on exertion, and she reported using a walker to ambulate (Ex. 12F/2). Imaging studies of the chest were reported to be normal. (*see* Ex. 12F/2). The claimant reported improvement on a sample of Stiolto, and she was provided with another sample of the medication, and the plan included a referral for pulmonary function tests (*id.*). She was also given a prescription for Breo Ellipta (Ex. 12F/4).

CAR 46-47.

1. Plaintiff's Contentions

Plaintiff argues:

> Heidi Langston alleges disability do [sic] to shortness of breath and dizziness upon standing and walking 10-25 feet and that she needs a seated walker. AR 108. The ALJ failed to provide clear and convincing reasons to reject the subjective symptoms of Heidi Langston. Once Langston demonstrated the existence of a condition that would cause some degree of pain and dysfunction, the burden shifted to the Commissioner through the ALJ to articulate specific reasons for rejecting the pain and limitation testimony. Social Security Ruling 16-3p (*footnote omitted*). Furthermore, when no evidence of malingering exists in the record, the ALJ must articulate clear and convincing reasons for rejecting the pain and limitation testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (burden increasing to clear and convincing in the absence of evidence of malingering).
>
> The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work

record; and (5) evidence from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating Langston complaints of limitation, the ALJ and this Court are obligated to consider the testimony not in a vacuum but in consideration of the record as a whole. "In addition, the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ does not identify any daily activities of Langston that he finds inconsistent with her subjective complaints. The ALJ merely states that the limitations alleged by Langston appear self-imposed. AR 46. However, the court knows that the limitations are not self-imposed because Dr. Su believed that a seated walker was warranted to help assist Langston with prolonged walking. The ALJ discredited Langston stating that Langston only received routine and conservative treatment, however, the ALJ does not provide any insight into any alternative treatments that would have provided Langston relief besides the activity limitations, cessation of smoking recommendation, and medications and inhalers that her doctor prescribed.

One of the most important factors in assessing Langston's credibility is her excellent work history- a factor which the ALJ did not consider. A good work history is probative of credibility. *Schall v. Apfel*, 134 F.3d 496, 502 (2nd Cir. 1998). It is a factor which the ALJ will and must consider in assessing Langston's credibility. *See* 20 C.F.R. § 404.1529(c)(3) (ALJ will consider all of the evidence presented, including information about a claimant's prior work record) and Social Security Ruling 96-7p (ALJ must consider prior work record). Since Langston has a great work history she was entitled to an enhanced level of credibility. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983) (finding that a good work history is probative of credibility) *citing Schaal* at 502.

A review of the work history shows that Langston worked as a certified nursing assistant for over 20 years and only stopped working due to the progression of her impairments. AR 237-245. As Langston's age increased her obesity increased, her blood pressure increased and her endurance decreased. AR 133 and 402. Langston quit smoking 11months prior to the hearing but she is still exposed to extensive second-hand smoke from her boyfriend with whom she lives with in a truck. AR 456. The consultative examiner and state agency both agreed that Langston's obesity could be the cause of her limitations. A remand is appropriate for the ALJ to properly consider Langston's subjective complaints.

2    <u>Disposition</u>

Because there is no affirmative evidence in the record of malingering, this Court applies the "clear and convincing" standard to analyze the Commissioner's reasons for rejecting Plaintiff's testimony as not credible. <u>See</u> <u>Lester</u>, 81 F.3d at 834. Plaintiff alleges that "disability do [sic] to shortness of breath and dizziness upon standing and walking" eventually caused her to

stop working as a nursing assistant after twenty years.  Plaintiff alleges the ALJ erred in not addressing Plaintiff's work history, stating, "[i]t is a factor which the ALJ will and must consider in assessing Langston's credibility" and, citing the Second Circuit, that "[s]ince Langston has a great work history she was entitled to an enhanced level of credibility."  The Court finds this argument unpersuasive.  Although work history is a factor the ALJ *may* consider in evaluating credibility, the ALJ can also factor into his determination the Plaintiff's reputation for truthfulness or other inconsistent testimony, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, the Plaintiff's daily activities, and physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284.  A lengthy past work history alone does not establish Plaintiff's credibility when the ALJ has specifically demonstrated multiple areas where the Plaintiff's subjective testimony is in direct conflict with objective evidence in the medical record and where, as here, that work history pre-dates the alleged onset date.  However, Plaintiff's concession that she looked for work *after* the alleged onset date indicates her subjective pain was not likely as debilitating as she claims.

Further, Plaintiff states, "[t]he ALJ discredited Langston stating that Langston only received routine and conservative treatment, however, the ALJ does not provide any insight into any alternative treatments that would have provided Langston relief besides the activity limitations, cessation of smoking recommendation, and medications and inhalers that her doctor prescribed."  However, the ALJ is not required to list "alternative treatments" that would have provided relief to a Plaintiff because the ALJ does not have that burden.  Rather, "[a]t all times, the burden is on the claimant to establish her entitlement to disability insurance benefits." Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), as amended (Jan. 26, 1999).  Because Plaintiff did not establish in the record an alternative treatment beyond the routine and conservative treatment she already received that would have relieved Plaintiff's alleged pain, this Court finds Plaintiff did not meet her burden and the ALJ properly relied on the provided evidence in determining Plaintiff's credibility.

///

| | |
|---|---|
| 1 | Finally, Plaintiff appears to contend the ALJ improperly relied on her daily activities to find her subjective testimony not credible. The Court does not agree with this argument. The ALJ found Plaintiff's testimony not credible by highlighting the inconsistency between Plaintiff's allegations of very limited daily activity due to shortness of breath and difficulty walking and the objective medical record that revealed imaging studies of the chest were unremarkable, Plaintiff was only recently referred for pulmonary function testing, and the physical examinations that did not document any abnormalities with gait. The ALJ did not improperly conclude Plaintiff's daily activities were inconsistent with the activities of a disabled individual, but rather observed the activities listed by Plaintiff were inconsistent with the lack of evidence regarding any limitations associated with shortness of breath or difficulty walking.

Accordingly, this Court finds the ALJ provided clear and convincing evidence from the record to support the rejection of Plaintiff's subjective complaints.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;
2. Defendant's motion for summary judgment (ECF No. 25) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: August 5, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE